IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL GORDON DAY | DOCKET NO. 1:23-CR-13 |

**Government's Response to the Defendant's Motion to
Suppress Location Data and Arrest (Doc. 33)**

The Court is not presented with a scenario where the police secretly attached a tracking device to a suspect to stalk his movements. Rather, Paul Gordon Day robbed PNC Bank and failed to notice a GPS tracker hidden in the money he stole. Day can hardly complain when the bank and the police make use of that technology to find him.

Day's *Motion* should be denied for four reasons: (1) the Fourth Amendment affords him no relief from the actions of a third-party; (2) he had no reasonable expectation of privacy in the stolen property; (3) Day was detained based on reasonable suspicion; and (4) even if his detention was a warrantless arrest, it was supported by probable cause.

### Facts

#### *The Robbery of PNC Bank*

Day robbed the PNC Bank in downtown Asheville at 4:20 p.m. on November 9, 2022. He stationed his car a few blocks north of the bank, then rode a bicycle

1

south and parked it outside. He entered the bank dressed to rob it (*pictured*). Armed with a fully-functional loaded revolver wrapped in black plastic, Day walked to the teller counter and demanded cash. The tellers complied and collectively gave him $3,520 from their cash drawers. Day took the money, walked out the side door, and fled north on the bicycle.



     Unbeknownst to Day, one of the bands of money he stole was imbedded with a GPS tracking device. This "GPS track pack" signaled the bank's security company, 3SI Security, when it was removed from the cash drawer. 3SI Security alerted the Asheville Police Department of a robbery in progress and began tracking the location of the device via real-time GPS. This data was freely shared with police to assist in locating the device. Additionally, based on witness statements from the bank, police dispatch told officers they were looking for a white male, possibly wearing a hat, sun glasses, mask, blue sweatpants, Under Armour brand sneakers, and gloves. (*Asheville Police Department report*, Doc. 33-1 at 9).

     The GPS device moved north of downtown Asheville through the Montford District, turned onto north Broadway Street at 4:32 p.m., then immediately onto

Case 1:23-cr-00013-MR-WCM    Document 39    Filed 08/10/23    Page 2 of 12

northbound I-26. Police dispatch updated officers on the location of the device in real-time as it continued north. (*Id.* at 7-10). Weaverville Police Officer Nicholas Shea was in the area and began looking for a vehicle mirroring the location information he was receiving. At 4:41 p.m., officers were told the device exited off I-26 and turned right to go southeast on Stockton Branch Road. The device was traveling at 40 miles per hour. Officer Shea was seconds behind on I-26 and took the same exit to turn right onto Stockton Branch Road. He accelerated southeast along the same road the device had just traveled, now being told the GPS device was approaching Little Joes Drive at 4:43 p.m.

### *The Arrest of Day*

Officer Shea first laid eyes on a gray 2011 Kia Sportage as it passed Little Joes Drive. He saw no other vehicle heading in that direction. Officer Shea alerted dispatch of the sighting, including his observation that the driver was a male, and followed the Kia for one half-mile as it approached the intersection of Stockton Branch Road and Barnardsville Highway. At 4:44 p.m., Officers Cody Ervin and Nicholas Shea initiated a traffic stop at that intersection.

The officers drew their firearms and ordered the driver, Day, to get out of the Kia. He did and was handcuffed. Day—a white male wearing blue pants and dark sneakers—was the only occupant of that Kia. Officers were able to clearly see a bicycle (*pictured, next page*) laying in the back of the Kia.



When Day parked his Kia and surrendered to the officers, the GPS device never moved from that location. Within minutes, 3SI Security told dispatch they would activate the GPS device's "chirp alarm"—an audible signal that the device can emit. Officer Shea heard the "chirp" inside the Kia, thus confirming the stolen device was inside the car.

Day was arrested and taken to the police station in Asheville. The Kia was secured and likewise moved back to Asheville.

## Argument

Day has not even established that a search occurred in this case. After all, a private entity tracked their own property which had been stolen. Day cries foul despite his Fourth Amendment rights not being implicated by the efforts of a third-

4

party actor. Unless he can articulate how those facts amount to a search, Day's motion can be denied on that basis alone. *See Oregon v. Elstad*, 470 U.S. 298, 308 (1985) (recognizing that where there is no constitutional violation, there are no fruits of a constitutional violation to suppress).

Even if tracking the device was attributable to the Government and implicated a Fourth Amendment right, Day cannot logically assert a reasonable expectation of privacy in the stolen GPS device.

### I. The GPS location of the stolen bills was tracked by 3SI Security. Because there was no search by a government actor, the Fourth Amendment is not implicated.

It was established more than 100 years ago that the Fourth Amendment protects against unlawful searches and seizures by government actors. *Burdeau v. McDowell*, 256 U.S. 465, 475-76 (1921). It was not intended to be a limitation upon non-government intrusion. *Id.* The Fourth Amendment does not provide protection against searches by private individuals acting in a private capacity. *See United States v. Jacobsen,* 466 U.S. 109, 113 (1984) (holding that the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official"). If there was no action by an "instrument or agent" of the state, then the Fourth Amendment is not implicated. *Coolidge v. New Hampshire*, 403 U.S. 443, 487-490 (1971). The defendant bears the burden of proving

5

Case 1:23-cr-00013-MR-WCM    Document 39    Filed 08/10/23    Page 5 of 12

that an agency relationship exists. *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2003).

In *Coolidge*, the wife of a murder suspect gave police four firearms belonging to Coolidge and clothes she believed he wore on the night of the murder. *Coolidge*, 403 U.S. at 487-90. Coolidge sought to suppress those items from trial, claiming that his wife was acting as an "instrument" of the police. He argued that this afforded him the protections of the Fourth Amendment.

Coolidge was wrong. The Supreme Court opined that his wife voluntarily produced the items in a misguided attempt to clear her husband's name. The government did not coerce, dominate, or direct her actions. *Id.* at 489. The exclusionary rule was meant to target official misconduct, and her actions were not the police's actions. *Id.* at 487. As Justice Stewart plainly stated:

> Had Mrs. Coolidge, wholly on her own initiative, sought out her husband's guns and clothing and then taken them to the police station to be used as evidence against him, there can be no doubt under existing law that the articles would later have been admissible in evidence.

*Id.*, *cf. Burdeau*, 256 U.S. at 475-76.

Similarly, there was nothing wrongful about the police's acquisition of the GPS information associated with the stolen bills in our case. The owner of the device tracked it and, on their own initiative, gave its data to the police. *See id.* Like the well-intentioned Mrs. Coolidge, the third-party security company who voluntarily gave data to the police was not acting as a government agent. Because the Fourth

6

Amendment does not apply, there is no need to assess whether there was an expectation of privacy implicated, and Day's *Motion* fails.

> **II. Day unlawfully took the GPS tracker concealed within the bait bills. He had no reasonable expectation of privacy in the data broadcast from the stolen device.**

While the GPS location was tracked by 3SI Security, the location information was simulataneouly made available to law enforcement in real-time. Even if the tracking of the GPS location is attributable to the Government, there is no Fourth Amendment violation because Day did not have a reasonable expectation of privacy in the data produced by the GPS device—property which he stole from PNC Bank.

A defendant may challenge a search only if he has an individualized and objectively reasonable expectation of privacy in the item searched. *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013); *United States v. Rose*, 3 F.4th 722, 727 (4th Cir. 2021). A thief does not have a reasonable expectation of privacy in a stolen item. *Byrd v. United States*, 128 S. Ct. 1518, 1529 (2018). The defendant bears the burden of showing a reasonable expectation of privacy in the relevant property, generally referred to as "standing." *Id.* at 1530; *United States v. Ferebee*, 957 F.3d 406, 412 (4th Cir. 2020).

There does not appear to be any dispute that the GPS device belonged to, and was stolen from, PNC Bank. It is well-accepted that the possessor of a stolen item cannot challenge the search of that item. This is because there is no recognized

legitimate expectation of privacy in stolen goods. Whatever interest Day claims he had is secondary to the rights of the property owner. For that reason, his *Motion* should be denied.

> III. **The Fourth Amendment authorized Officer Shea to stop Day's car and investigate the bank robbery. This required merely reasonable suspicion, not probable cause.**

In arguing that his initial seizure amounted from the outset to a full custodial arrest unsupported by probable cause, Day ignores the scope of a law enforcement officer's authority in conducting a lawful *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). Day's initial detention was supported by reasonable, articulable suspicion of criminal activity. *See id.* at 21.

"Brief stops in order to determine the identity of a suspicious individual or to maintain the status quo while obtaining more information are permitted if reasonable in light of the facts known to the officers at the time." *United States v. Perate,* 719 F.2d 706, 709 (4th Cir. 1983). During a *Terry* stop, an officer may take actions that are reasonably necessary to assure his safety and effectuate the investigatory purpose of the stop. *United States v. Hensley,* 469 U.S. 221, 235 (1985); *United States v. Leshuk,* 65 F.3d 1105, 1109 (4th Cir. 1995). In situations where officers are forced to approach a vehicle in a high crime area that contains persons suspected of being involved with the distribution of narcotics, it is certainly reasonable for those officers to perceive a possible threat to their safety, draw their weapons when approaching the vehicle,

8

order the occupants to exit, and perform a protective frisk of those occupants, all without elevating the seizure to a full custodial arrest. *See United States v. Rooks,* 596 F.3d 204, 210 (4th Cir. 2010); *United States v. Sakyi,* 160 F.3d 164, 169 (4th Cir. 1998); *United States v. Stanfield,* 109 F.3d 976, 984 (4th Cir. 1997); *Perate,* 719 F.2d at 709.

The fact that Day was handcuffed immediately and detained did not convert his initial seizure into an arrest. There existed ample reasonable suspicion to detain Day based on the victims' description of the armed robber alone. To further solidify that, Officer Shea was receiving real-time information from law enforcement dispatch that a vehicle traveling in his area was emitting the GPS money tracker signal. He was looking for a vehicle matching the movements and location relayed to him. This is why he stopped Day and allowed other vehicles to proceed on.

Because it was reasonable to detain the suspected armed robber at gun point and place him in handcuffs, Day's *Motion* should be denied.

### IV. Officer Shea had ample probable cause to believe Day robbed PNC Bank, which authorized him to make a warrantless arrest.

A police officer may make a warrantless arrest as long as he has probable cause to do so. *United States v. Williams,* 10 F.3d 1070, 1073 (4th Cir. 1993). Probable cause is present when the "facts and circumstances within the officer's knowledge" are enough to justify a prudent person's belief "that the suspect has committed, is committing, or is about to commit an offense." *Id.*, *citing Michigan v. DeFillippo*, 443

U.S. 31, 37 (1979).

Day found himself in such a situation. The officers were justified in performing a lawful arrest of Day based soley on his association with the GPS tracking device data. But while officers were conducting a lawful *Terry* stop based on that information, they observed numerous pieces of relevant evidence within plain view. Day was a white male. He was wearing blue pants as described by witnesses. A bicycle was laying down within the passenger area of the Kia. And, again, the Kia traveled exactly as tracked by the GPS, and the GPS "chime" alerted from within the car. Knowing they were looking for a bank robber with the same items, Officers Shea and Ervin would have been derelict in their duties to act in any other manner than they did. The circumstances presented probable cause to support the warrantless arrest of Day.

> **V.** ***Jones* and *Carpenter* address Fourth Amendment concerns dissimilar to those presented by Day.**

The Government must lastly address Day's misplaced dependance on *United States v. Jones*, 565 U.S. 400 (2012) and *United States v. Carpenter*, 138 S. Ct. 2206 (2018), to dispel the implication that his case is in any way similar. After all, Day relies on no additional legal authority to support his position that he was subjected to an unlawful search. (Doc. 33 at 3-5).

*Jones* presents an issue of government tracking. Using an expired warrant, FBI agents attached a GPS tracking device to Jones' Jeep and tracked if for the next 28

10

days. *Jones*, 565 U.S. at 402-03. The Court held that these actions constituted an unlawful "search" for Fourth Amendment purposes. Key to that holding was that Jones was in possession of the car when the government "trespassorily inserted the information-gathering device." *Id.* at 410. The search was unlawful because the government trespassed for the purpose of obtaining information without a warrant. *Id.* at 404-06.

It would be incorrect to apply this analysis to Day's case. Whereas the government specifically trespassed on property belonging to Jones, no such act occurred here. Day usurped the GPS device concealed by, and within property belonging to, PNC Bank.

Similarly, *Carpenter* has no useful application to Day's claims. There, the police obtained orders under the Stored Communications Act to obtain cell phone records for the defendant and others who were suspected in multiple robberies. The Supreme Court in *Carpenter* ruled that obtaining the cell-site location information (CSLI) by court order violated Carpenter's reasonable expectation of privacy in the whole of his movements. *Carpenter*, 138 S.Ct. at 2219 (2018). Specifically, "the third-party doctrine—voluntary exposure—[does not] hold up when it comes to CSLI. Cell phone location information is not truly 'shared' as one normally understands the term." *Id.* at 2220. Chief Justice Roberts wrote that, because a cell phone logs a cell-site record any time it is operated, without any act required by the user, "in no

meaningful sense does the user voluntarily 'assume the risk' of turning over a comprehensive dossier of his physical movements." *Id.*

That scenario stands in stark contrast to the one presented here, where Day was not compelled to disclose any information regarding the stolen GPS device. His actions would be more akin to the "voluntary assumption of risk" specifically excluded from the Court's holding in *Carpenter*. A holding that the court explicitly described as "a narrow one." *Id.* ("We do not express a view on matters not before us: real-time CSLI or "tower dumps.").

## Conclusion

The concealment and tracking of the GPS device neither implicated nor violated Day's Fourth Amendment rights. No amount of mental gymnastics can afford Day a legitimate expectation of privacy in that stolen item.

DENA J. KING
UNITED STATES ATTORNEY

 /s/ *Alex M. Scott*
Alex M. Scott, Kansas Bar No. 25490
Assistant United States Attorney
100 Otis Street, Room 233
Asheville, North Carolina 28801
(828) 271-4661
alex.scott@usdoj.gov

12