IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-CR-00013-MR-WCM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| PAUL GORDON DAY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's "Motion to Suppress and Memorandum in Support (Phone Location)" (the "Motion to Suppress – Phone Location") (Doc. 35) which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Relevant Procedural Background

The Motion to Suppress – Phone Location was filed on July 21, 2023. The Government responded on August 10, 2023 (Doc. 41) and Defendant replied on August 22, 2023 (Doc. 49).

The parties were given the opportunity to present oral argument on the Motion during a hearing that was held on September 28, 2023.[1]

---

[1] Additional procedural background information appears in the Memorandum concerning Defendant's Motion to Suppress – Cash Tracker (Doc. 33), which is being filed simultaneously.

1

## II. Factual Background

### A. The Subject of the Instant Motion to Suppress

On December 19, 2022, J.P. Hylton ("Detective Hylton"), a detective with the Chesterfield County, Virginia Police Department and a task force officer with the Federal Bureau of Investigation, submitted an application (the "Application") for a warrant related to Detective Hylton's investigation of a bank robbery that occurred on September 29, 2022 at the First Community Bank in North Chesterfield, Virginia (the "Virginia Bank"). Doc. 35-1. The Application sought authorization to seize and review data regarding a certain cellular device, for the period of September 1, 2022 through November 9, 2022, in relation to the commission of the Virginia state law offenses of robbery and use of a firearm in the commission of a felony. Id. This data included "information regarding the location of the cellular device…including information regarding the device's latitude and longitude and distance to tower….". Id.

A magistrate granted the Application the same day.[2]

T-Mobile produced information in response to the warrant.[3]

---

[2] Defendant states that the Application was approved, and the warrant was issued by, "a Chesterfield County, VA, magistrate." Doc. 35 at 1. A copy of the warrant itself does not appear to be included in the materials submitted. However, the undersigned presumes that the magistrate issued the warrant that was sought by the Application.

Defendant asserts that the Application was insufficient to establish probable cause that evidence of a crime would be found in information responsive to the warrant and, specifically, seeks to suppress the phone location data obtained in response to the warrant. In that regard, Defendant contends that, although the Application provided facts sufficient to establish probable cause that a robbery had occurred at the Virginia Bank, the Application was "wholly conclusory as to the identity of the robber." Doc. 35 at 2.

### B. Evidence Considered

Defendant did not request an evidentiary hearing on the Motion, and one was not required. United States v. Griffin, 811 F. App'x 815, 816 (4th Cir. 2020) (per curiam) (stating that "an evidentiary hearing is not always required to resolve a motion to suppress" and that such a hearing is required "only if the motion to suppress is 'sufficiently definite, specific, detailed, and non-conjectural' to enable a district court to conclude that contested issues of fact going to the validity of the search are in question") (citing Fed. R. Crim. P. 12(c) (other internal citation omitted)); see also United States v. Shah, No. 5:13–CR–328–FL, 2015 WL 72118, at *19 (E.D.N.C. Jan. 6, 2015).

---

[3] The record is unclear as to when the warrant was served on T-Mobile and when T-Mobile responded. Defendant has produced two sets of data – one that is comprised of 1660 pages and appears to be the "tower dump" records discussed below, and another that is comprised of 575 pages and appears to be the information sought by the subject warrant. Docs. 35-2 and 35-3.

Accordingly, for purposes of this Motion, the undersigned has considered only the information presented in the Application. See United States v. Lyles, 910 F.3d 787, 791 (4th Cir. 2018); United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996) ("When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant.").

### C. Facts from the Application

Attachment II of the Application provided "material facts constituting probable cause." Specifically, the Application stated as follows:

On September 29, 2022, at approximately 3:53 p.m., an unknown subject, who was later identified to be Defendant, entered the Virginia Bank, approached a teller, produced an all-black semiautomatic handgun, and directed the teller to give him "all the 20s, 50s, and 100s." Doc. 35-1, Attachment II at ¶ 1. The teller complied. Defendant placed the money in his pockets, returned the firearm to his waistband, and left the area on foot. Id.

Subsequently, law enforcement responded and began using a K-9 unit to track Defendant's scent. The Application described the route followed by the K-9 before the scent was lost and included descriptive maps. Id. at ¶ 2. Additionally, Detective Hylton interviewed the bank teller and reviewed surveillance video of the robbery. That information indicated that Defendant was:

> … a W/M of slim build and average height (approximately 5'8-9"), brown hair, and between 40-50 years of age. Furthermore, wearing a gray-five panel/flat cap, sunglasses, white medical-style mask, light colored dress shirt, dark colored blazer jacket (dark blue or black), black "mechanics" gloves with white lettering, khaki pants, white socks, and brown squared-toe dress shoes.

Id. at ¶ 3.

Investigators then began gathering surveillance video from surrounding businesses. Id. at ¶ 4. From this information and having walked the path tracked by the K-9 unit on at least three occasions, Detective Hylton stated that he believed Defendant had parked his vehicle at approximately 3:23 p.m., entered the Virginia Bank at 3:53 p.m., and returned to his vehicle to flee the area no later than 4:08 p.m. Id. at ¶ 5.

On December 6, 2022, Detective Hylton obtained a "T-Mobile timing-advance/tower dump search warrant." Id. at ¶ 7.

On December 7, 2022, Detective Hylton traveled to Asheville Police Department headquarters where he was briefed on a robbery of a PNC Bank that occurred in Asheville on November 9, 2022. Detective Hylton learned that a GPS tracking device had been taken from PNC Bank, used to track money stolen from that bank, and that Defendant's vehicle, in which Defendant was the sole occupant, was thereafter stopped by law enforcement and Defendant was subsequently arrested. When given the opportunity to

5

make a phone call, Defendant contacted his mother and confessed to having committed the Asheville robbery. Before the conclusion of that call, Defendant advised that he had been staying in Room 227 at the Red Roof Inn in Johnson City, Tennessee. Id. at ¶ 8.

The Asheville Police Department had requested assistance from law enforcement in Johnson City, who, on November 10, 2022, after being advised that Defendant was the last occupant of Room 227 and that the room was empty, entered the room and found "evidence of [Defendant's] extended stay (clothing, computer, notebook, perishable food, luggage, firearms, and evidence of drug use)." Id. at ¶ 9. The law enforcement officers photographed the room and collected items of evidentiary value. Upon Detective Hylton's review of those photographs, he observed several items of clothing that were consistent with the clothing worn by Defendant during the robbery of the Virginia Bank. Several flat caps, which were consistent with the style worn by Defendant, were also present in the room. Id. at ¶ 10.

Before leaving the Asheville Police Department, Detective Hylton learned that a black Samsung Galaxy S8+ was found in Defendant's vehicle. Detective Hylton was given access to this device and documented its serial numbers. Id. at ¶ 11.

On December 8, 2022 at 2:33 p.m., Defendant called his mother from a recorded line at the Buncombe County Detention Facility. During that call,

6

Defendant told his mother he was being investigated for a "look-alike crime up in Richmond." Id. at ¶ 13.[4]

On December 9, 2022, at 8:37 p.m., Defendant called his father and mother, again using a recorded line at the jail. During that call, Defendant's father told Defendant that they (Defendant's parents) had "looked at the pictures from Richmond" and could tell it was Defendant. Specifically, Defendant's father stated: "You're wearing your white khaki pants, your light brown shoes…. " Defendant protested that it was not him, to which his father responded, "I'm telling you that your mother and I could recognize you from the pictures." Id. at ¶ 14.

On December 14, 2022, the "tower dump" records from T-Mobile were sent to Detective Hylton. The Application reported that a preliminary plotting of that data showed the phone that had been located in Defendant's possession when he was arrested "was in the area around the time of" the Virginia Bank robbery. Id. at ¶ 15.

### III. Discussion

#### A. Probable Cause

"Probable cause requires only 'a fair probability,' and not a prima facie showing, that 'contraband or evidence of a crime will be found in a particular

---

[4] It appears that North Chesterfield is located near Richmond. See North Chesterfield, Richmond, VA to Richmond, VA - Google Maps, last accessed Nov. 3, 2023.

place.' Probable cause is therefore 'not a high bar.'" United States v. Bosyk, 933 F.3d 319, 325 (4th Cir. 2019) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983) and District of Columbia v. Wesby, --- U.S. ---, 138 S. Ct. 577, 586 (2018)) (internal citations omitted). "An assessment of the presence of probable cause must be based on the totality of the relevant circumstances, rather than on the technical or rigid demands of a formulaic legal test." United States v. Glass, No. 5:21-CR-00060-KDB-DSC, 2023 WL 2844365, at *7 (W.D.N.C. Apr. 7, 2023). Consequently, "'great deference' is given to the magistrate's assessment of the facts presented to him.'" United States v. Montieth, 662 F.3d 660, 664 (4th Cir. 2011) (quoting United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990)) (internal citation omitted).

The instant Motion presents the question of whether the Application provided sufficient information to indicate there was probable cause to believe that evidence of the Virginia crimes referenced by the Application – robbery and use of a firearm in the commission of a felony – would be found in the location data associated with Defendant's cell phone.

Defendant argues that a significant portion of the Application relied on the Asheville robbery, which occurred more than a month after the Virginia Bank robbery, and the conclusory implication that the same individual committed both crimes. However, the Application explained that Defendant had been arrested following the Asheville robbery and that preliminary

plotting of the "tower dump" data obtained from the phone seized following Defendant's arrest in North Carolina showed the same phone had been in the area of the Virginia robbery on September 29, 2022.[5] Further, the Application explained how Defendant, during a phone call with his mother, identified the Tennessee hotel room, how that room came to be searched, and that items of clothing consistent with those worn by Defendant during the Virginia robbery were identified. The Application also included color photographs of the suspect during the Virginia robbery.

Significantly, the Application also reported that, during a recorded jail call on December 9, 2022, Defendant's father told Defendant that he and Defendant's mother had "looked at the pictures from Richmond" and identified Defendant, stating specifically that Defendant was wearing his white khaki pants and his light brown shoes. When Defendant protested, his father repeated that he and Defendant's mother could recognize Defendant from the pictures. Although Defendant is correct that the Application did not explain how Defendant's parents came to see pictures from the robbery of the Virginia Bank or state specifically that the color photographs of that robbery in the Application were the same pictures that Defendant's parents had reviewed, the three photographs from the Virginia robbery that appear in the Application show an individual wearing clothes that are consistent with the

---

[5] Defendant does not challenge the warrant for the "tower dump" data.

clothing referenced by Defendant's father, as well as the articles of clothing found in the Tennessee hotel room.[6]

Finally, Defendant takes issue with the information Detective Hylton provided about the location of the phone immediately before and after the robbery. For example, Defendant appears to argue that the "tower dump" records themselves indicated that the device appeared to be stationary from 3:58 p.m. to 4:40 p.m., and that this information was contradictory to Detective Hylton's statement that the device appeared to be leaving the area at 3:59 p.m. However, Defendant does not explain the basis for his position that the "tower dump" records showed that the device was stationary from 3:58 p.m. to 4:40 p.m.

In sum, while Defendant takes issue with the inclusion or absence of individual facts, it is not necessary for the Court to determine whether any of these specific facts, standing alone, provided probable cause for the issuance of the warrant because the totality of the relevant circumstances did provide probable cause to believe that evidence of the Virginia crimes referenced in the Application would be found in the data sought.

---

[6] These articles of clothing are not particularly unusual, but they are consistent with the apparel worn by the suspect in the Virginia robbery, as described by the bank teller and shown by the surveillance images.

### B. The Good Faith Exception

The Government also argues that, even if the warrant was legally deficient, the evidence regarding the location of Defendant's cell phone should not be suppressed because it was obtained in good faith reliance on the warrant.

The decision of the Supreme Court in United States v. Leon, 468 U.S. 897 (1984) "teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (quoting Leon, 468 U.S. at 922 n.23).

"This 'good faith' exception will be applied except in four limited situations: (1) when the affiant based his application on knowing or reckless falsity; (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a 'rubber stamp' for the police; (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid." United States v. Wellman, 663 F.3d 224, 228–29 (4th Cir. 2011) (citing

11

United States v. Doyle, 650 F.3d 460, 467 (4th Cir. 2011) (quoting United States v. DeQuasie, 373 F.3d 509, 519–20 (4th Cir. 2004)).

As discussed above, the Application presented sufficient evidence to establish probable cause for the issuance of the warrant.

However, in the alternative, even if probable cause was lacking, a reasonably well-trained law enforcement officer would not have known that the search of Defendant's phone location date was illegal despite the warrant, given the information in the Application about the Asheville robbery and the Virginia robbery, the identification of Defendant by his own parents, and the information from the "tower dump" records that indicated Defendant's phone was in the area of the Virginia robbery.

## IV. Recommendation

The undersigned therefore respectfully **RECOMMENDS** that Defendant's Motion to Suppress – Phone Location (Doc. 35) be **DENIED**.

Signed: November 6, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(B), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).