IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-CR-00013-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> PAUL GORDON DAY, ) <br> ) <br> Defendant. ) <br> _____ ) | MEMORANDUM AND RECOMMENDATION |

This matter is before the Court on Defendant's "Motion to Suppress and Memorandum in Support (Car)" (the "Motion to Suppress – Vehicle Search" Doc. 34) which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Relevant Procedural Background

The Motion to Suppress – Vehicle Search was filed on July 21, 2023. The Government responded on August 10, 2023 (Doc. 40) and Defendant filed a reply on August 22, 2023 (Doc. 48).

The parties were given the opportunity to present oral argument on the Motion during a hearing that was held on September 28, 2023.[1]

---

[1] Additional procedural background information appears in the Memorandum concerning Defendant's Motion to Suppress – Cash Tracker (Doc. 33), which is being filed simultaneously.

1

II. Factual Background

A. The Subject of the Instant Motion to Suppress

On November 10, 2022, Detective Albert Ball ("Detective Ball") of the Asheville Police Department submitted an application ("Application") for a warrant authorizing the search of a Kia Sportage motor vehicle (the "Vehicle") related to Detective Ball's investigation of a bank robbery that occurred on November 9, 2022 at a PNC Bank in Asheville, North Carolina (the "Bank"). Doc. 34-1 at 2–7. The Application sought authorization to search the Vehicle for, among other things, "any clothing that might help identify recent occupants of the vehicle," "any firearms, firearm type equipment, ammunition, ammunition shell casings or anything that would pertain to a firearm of any kind," "any monies to include US Currency," and "PNC Bank GPS Locator Device." Doc. 34-1, at 3–4.

The same day, Buncombe County Magistrate Danny Cowan Jr. granted the Application and issued a warrant authorizing the search of the Vehicle. Id. at 1.

Defendant asserts that the Application was based on evidence obtained via an "unconstitutional search of his location information" and that, even if such improperly obtained information was considered, the Application was insufficient to establish probable cause to indicate that evidence of the North

2

Carolina crimes of robbery with a dangerous weapon and possession of a firearm by a felon, see Doc. 34-1 at 5, would be found in the Vehicle.

### B. Evidence Considered

Defendant did not request an evidentiary hearing on the Motion, and one was not required. United States v. Griffin, 811 F. App'x 815, 816 (4th Cir. 2020) (per curiam) (stating that "an evidentiary hearing is not always required to resolve a motion to suppress" and that such a hearing is required "only if the motion to suppress is 'sufficiently definite, specific, detailed, and non-conjectural' to enable a district court to conclude that contested issues of fact going to the validity of the search are in question") (citing Fed. R. Crim. P. 12(c) (other internal citation omitted)); see also United States v. Shah, No. 5:13–CR–328–FL, 2015 WL 72118, at *19 (E.D.N.C. Jan. 6, 2015).

Accordingly, for purposes of this Motion, the undersigned has considered only the information presented in the Application. See United States v. Lyles, 910 F.3d 787, 791 (4th Cir. 2018); United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996) ("When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant.").

### C. Facts from the Application

Part V of the Application listed facts "to establish probable cause." Doc. 34-1 at 6–7. Specifically, the Application provided as follows:

3

On November 9, 2022 "calls came into dispatch advising of a robbery at PNC Bank (8 O' Henry Ave)" in Asheville; officers arrived on the scene and were "able to find that the bank had been robbed." Id. at 6. Multiple witnesses described the suspect as being a white male approximately 6 feet tall who was wearing a light-colored sweatshirt, dark-colored athletic pants, a paper mask, gloves, dark shoes, sunglasses, and a hat. Still images from the Bank, as well as witness reports, indicated that the suspect had a handgun and still images from the Bank showed that the suspect fled the scene on a bicycle. Id.

During the robbery, one of the Bank's tellers was able to place a GPS locator device with the money that the suspect stole. Id.

While law enforcement officers "were on scene the GPS locator was pinging near Stockton Branch [Road] off Barnardsville [Highway]." Law enforcement officers located and stopped a 2011 Kia Sportage with a Tennessee registration plate. Id. at 6–7.

Defendant, who was the only occupant of the Vehicle, was detained, and a light-colored sweatshirt matching the one the suspect was wearing at the time of the robbery, as well as a bicycle that appeared to be similar to the one the suspect had used, were seen in plain view in the backseat of the Vehicle. Id. at 7.

Defendant was transported to the Asheville Police Department to be interviewed but refused to answer questions, requested a lawyer, and asked to make a phone call. Defendant used Detective Ball's cell phone and, while he was doing so, Defendant stated to a person on the phone that "I committed a robbery and I know I screwed up." Id.

Warrants were then obtained for Defendant, who was taken to the Buncombe County Detention Facility where he was being held under a $500,000 secured bond. The Vehicle was taken to the Asheville Police Department Forensic Bay to be processed. Id

### III. Discussion

#### A. Probable Cause

"Probable cause requires only 'a fair probability,' and not a prima facie showing, that 'contraband or evidence of a crime will be found in a particular place.' Probable cause is therefore 'not a high bar.'" United States v. Bosyk, 933 F.3d 319, 325 (4th Cir. 2019) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983); District of Columbia v. Wesby, --- U.S. ---, 138 S. Ct. 577, 586 (2018)) (internal citations omitted). "An assessment of the presence of probable cause must be based on the totality of the relevant circumstances, rather than on the technical or rigid demands of a formulaic legal test." United States v. Glass, No. 5:21-CR-00060-KDB-DSC, 2023 WL 2844365, at *7 (W.D.N.C. Apr. 7, 2023). Consequently, "'great deference' is given to the magistrate's

assessment of the facts presented to him." United States v. Montieth, 662 F.3d 660, 664 (4th Cir. 2011) (quoting United States v. Blackwood, 913 F.2d 139, 142 (4th Cir.1990)) (internal citation omitted).

Here, Defendant argues that, for the reasons stated in his other Motions to Suppress, "nearly all of the information that Detective Ball presented to Magistrate Cowan was unlawfully obtained." Doc. 34 at 2. However, and as discussed in the context of Defendant's other Motions to Suppress, the undersigned is not persuaded that the information set forth in the Application was unlawfully obtained.

Additionally, Defendant contends that even if the Court were to consider the evidence that is the subject of Defendant's other Motions to Suppress, the Application still did not establish probable cause to authorize a search of the Vehicle because the Application did not sufficiently indicate that a robbery had occurred or provide sufficient evidence about the identity of the robber.

The Application, though, stated that "dispatch," which the issuing magistrate could have reasonably understood to mean the dispatch center for the Asheville Police Department, had received calls that the Bank had been robbed, and that officers responded and determined that a robbery had occurred. Further, the Application described information that law enforcement had obtained from still images from the Bank as well as from

6

multiple witnesses, including a physical description of the suspect and his apparel, and that he possessed a handgun. In addition, the Application stated that one of the tellers at the Bank had been able to place a GPS locator device with the money that the suspect stole. All of this information supported the statement in the Application that a robbery had occurred.

Next, the undersigned is not persuaded that the lack of additional information in the Application explaining the term "pinging" is problematic. Electronic devices, including GPS devices, are ubiquitous and the term "pinging" is commonly used. See, e.g., Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/ping, last accessed Nov. 3, 2023 (defining "ping" as a verb meaning "to send a signal to (a device, such as a cell phone) in order to determine its status or location"). Detective Ball's statement that a GPS locator device was concealed in the money taken by the suspect gave additional context to the term.

Finally, Defendant is correct that the Application advised that law enforcement had stopped a Kia Sportage but did not explicitly explain that Defendant's Vehicle had been tracked using the signal from the tracking device affixed to the cash taken from the Bank to the area of Stockton Branch Road off Barnardsville Highway. However, even if it was not reasonable for the magistrate to infer that the Vehicle had been stopped at that location, other information in the Application, including that a sweatshirt and a

7

bicycle consistent with the robbery were seen in the Vehicle in plain view and, significantly, that Defendant had stated that he had committed a robbery, supported a finding that probable cause existed to authorize the search of the Vehicle.

### B. The Good Faith Exception

The Government also argues that, even if the warrant was legally deficient, the evidence obtained from the Vehicle should not be suppressed because it was obtained in good faith reliance on the warrant. Doc. 40.

The decision of the Supreme Court in United States v. Leon, 468 U.S. 897 (1984) "teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (quoting Leon, 468 U.S. at 922 n.23).

"This 'good faith' exception will be applied except in four limited situations: (1) when the affiant based his application on knowing or reckless falsity; (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a 'rubber stamp' for the police; (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely

8

unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid." United States v. Wellman, 663 F.3d 224, 228–29 (4th Cir. 2011) (citing United States v. Doyle, 650 F.3d 460, 467 (4th Cir. 2011) (quoting United States v. DeQuasie, 373 F.3d 509, 519–20 (4th Cir. 2004)).

As discussed above, the Application presented sufficient evidence to establish probable cause for the issuance of the warrant.

However, in the alternative, even if probable cause was lacking, a reasonably well-trained law enforcement officer would not have known that the search of the Vehicle was illegal despite the warrant, given the information provided about the robbery, the evidence that was located in the Vehicle prior to the search authorized by the warrant, and Defendant's statement that he had committed a robbery.

### IV. Recommendation

The undersigned therefore respectfully **RECOMMENDS** that Defendant's Motion to Suppress—Vehicle Search (Doc. 34) be **DENIED**.

Signed: November 6, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(B), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).